UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE COMPLAINT OF GREBE SHIPPING LLC AND EAGLE SHIP MANAGEMENT LLC FOR EXONERATION FROM OR LIMITATION OF LIABILITY | Case No. 3:19-cv-861-MPS |

**RULING ON MOTION TO TRANSFER**

Currently pending before this Court are two motions in this admiralty case: the Claimants' joint motion to lift the stay on their state court action, ECF No. 73, and the Petitioners' motion to transfer this Limitation Action to the United States District Court for the Southern District of Texas, ECF No. 77. For the reasons set forth below, I grant the Petitioners' motion to transfer. Having found that transfer to another venue is appropriate, I deny without prejudice the Claimants' motion to lift the stay.

**I.    BACKGROUND**

This admiralty matter arises from the death of Francisco Manuel Montoya and the injury of several other longshoremen (collectively, "Claimants") on the *M/V Grebe Bulker* in the Port of Houston. I assume familiarity with the facts of the incident, which are summarized in the parties' memoranda, ECF Nos. 75, 80. I also assume familiarity with the procedural history of this case, as described in the parties' memoranda, but summarize it briefly here. Montoya's family sued Eagle Bulk Shipping, Inc.—the alleged beneficial owner of the *M/V Grebe Bulker*—in Connecticut state court on November 9, 2018 (the "State Court Action"). Grebe Shipping LLC and Eagle Ship Management LLC ("Petitioners"), the owner and operator of the *M/V Grebe*

1

*Bulker*, filed a Complaint for Exoneration from or Limitation of Liability[1] on January 18, 2019 in the United States District Court for the Southern District of Texas (the "Limitation Action"). ECF No. 1. That court issued a stay of all proceedings involving the incident, pursuant to 46 U.S.C. § 30511(c), including the State Court Action. ECF No. 5. The Claimants asserted claims in the Limitation Action. They also moved to dismiss or transfer venue to this court, arguing that the Southern District of Texas was not a proper venue for the Limitation Action under Rule F(9) of the Fed. R. Civ. P. Supplemental Rules for Admiralty or Maritime Claims, because, under that rule, the complaint had to be filed in a district "in which the owner has been sued with respect to any claim" as to which the owner seeks to limit liability, and the State Court Action was a suit against the owner. ECF No. 15; Rule F(9). The Southern District of Texas granted the motion to transfer venue to this court. ECF No. 47. The Petitioners now move to transfer the Limitation Action back to the Southern District of Texas pursuant to Rule F(9) and 28 U.S.C. § 1404. ECF No. 75. The Claimants oppose transfer. ECF No. 80.

After the Limitation Action was transferred to this court, the Claimants filed a joint motion to lift the stay on their State Court Action. ECF No. 73. The Petitioners oppose the motion to lift the stay and argue that this court should first decide the transfer motion, since the "court that ultimately hears the merits of the Petitioners' claims under the Limitation Action should determine whether to lift the stay." ECF No. 81 at 3.

---

[1] The Limitation Act, 46 U.S.C. §§ 30501 *et seq.*, "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438, 446 (2001).

## II. MOTION TO TRANSFER

### A. Legal Standards

The Petitioners move to transfer venue "pursuant to 28 U.S.C. § 1404 and Rule F(9)." ECF No. 75 at 1. Rule F(9) provides mandatory venue rules for filing a complaint in a Limitation Action, including the above-quoted rule requiring the filing of the complaint in the district in which the owner has been sued. Rule F(9) also provides:

> For the convenience of parties and witnesses, in the interest of justice, the court may transfer the action to any district; if venue is wrongly laid the court shall dismiss or, if it be in the interest of justice, transfer the action to any district in which it could have been brought.

Fed. R. Civ. P. Supp. R. F(9). As explained in the Advisory Committee Notes to the 1966 adoption, Rule F(9)'s "provision for transfer [was] revised to conform closely to the language of 28 U.S.C. §§ 1404(a) and 1406(a), though it retains the existing rule's provision for transfer to *any* district for convenience. The revision also makes clear what has been doubted: the court may transfer if venue is wrongly laid." 39 F.R.D. 69, 165 (emphasis added).

28 U.S.C. § 1404 provides the rules for transfer of "any civil action." Under that statute, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." § 1404(a). The movant "bears the burden of establishing the propriety of transfer by a clear and convincing showing." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 266 (D. Conn. 2012).

### B. Discussion

In their opposition brief, the Claimants argue that motions to transfer under § 1404 require a two-step inquiry: (1) as a threshold matter, whether the transferee district is one in which the action "might have been brought," based on "federal laws of venue, service, and

3

jurisdiction," and (2) whether transfer is justified "for the convenience of the parties and witnesses, in the interest of justice." ECF No. 80 at 6 (citing *Farrell v. Wyatt*, 408 F.2d 662, 666 (2d Cir. 1969)); *see also Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). The Claimants assert that the Southern District of Texas already "found that venue was improper" there, and that that court is therefore "not a venue in which this action 'might have been brought;'" consequently, they argue, Petitioners have "failed to meet . . . the first, threshold step in a Rule 1404(a) motion." ECF No. 80 at 6.

While the Claimants correctly characterize the § 1404(a) analysis in a typical civil action, courts have applied a different analysis to motions to transfer in the admiralty context, under Rule F(9). The Advisory Committee's Note on that rule specifically indicates that, while the provision is "revised to conform closely to the language of 28 U.S.C. § 1404(a)," Rule F(9) "retains the existing rule's provision for transfer to *any district* for convenience." 39 F.R.D. 69, 165 (emphasis added). Several courts have found, based on the language of the Rule and the Advisory Committee's Note, that transfer under Rule F(9) does *not* require the movant to show that the action could have been brought in the transferee district initially. *See In re Cenargo Navigation Ltd.*, No. 98 CIV. 4481, 1998 WL 1108990, at *2 (S.D.N.Y. Oct. 26, 1998) ("The standards for transfer under [Rule F(9)] are the same as under the statute [28 U.S.C. § 1404(a)] save that a limitation proceeding may be transferred to any district without regard to whether the action could have been brought there initially."); *In re BOPCO, L.P.*, No. CIV.A. H-12-1113, 2012 WL 4068682, at *1 (S.D. Tex. Sept. 14, 2012) ("Rule F(9) was drafted to conform closely to the language of the federal transfer statute, 28 U.S.C. Section 1404(a), except that Rule F(9) allows transfer to any district for convenience, while Section 1404(a) only permits transfer to a district where the action might have been brought or where all parties consent to have it heard.

4

Thus, even though Rule F(9) did not allow Plaintiff initially to file its limitation of liability claim in the Eastern District of Louisiana, once the case has been transferred here Plaintiff may then move to send it back to that forum for convenience."); Wright & Miller, 12 Fed. Prac. & Proc. Civ. § 3253 (3d ed.) ("Unlike the statute for civil actions, however, Rule F(9), like its predecessor in the Admiralty Rules, permits transfer to 'any district.' It need not be a district in which venue initially would have been proper."). Indeed, the Southern District of Texas, when ordering transfer to this court, contemplated a potential transfer back to that court. *See* ECF No. 47 at 6 (noting that "the fact that the Southern District of Texas may be a more convenient forum is irrelevant to the determination of the motion to transfer under a mandatory venue statute," and that "[i]t will be for the district court in Connecticut to address any motion to transfer pursuant to 28 U.S.C. § 1404(a)," and citing cases involving cases transferred and then "transferred back" under Rule F(9)). Because the Petitioners' motion to transfer is brought under Rule F(9), rather than solely under 28 U.S.C. § 1404(a), it is not relevant whether the Limitation Action could have been brought in the Southern District of Texas initially.[2]

When analyzing motions to transfer under Rule F(9), courts instead proceed directly to considering the "convenience of parties and witnesses, in the interest of justice." In this analysis, courts draw on the same factors used for § 1404(a) motions: "(i) convenience of parties; (ii) convenience of witnesses; (iii) availability of process to compel unwilling witnesses to appear; (iv) cost of obtaining witnesses; (v) ease of access to relevant sources of proof; (vi) site of occurrence of events at issue; (vii) capacity of the alternative venue to expeditiously and

---

[2] None of the parties suggests that the Southern District of Texas would lack personal jurisdiction over any of the parties. The Claimants are all Texas residents, ECF No. 80 at 8; the Petitioners filed their Limitation Action in the Southern District of Texas, consenting to jurisdiction there; and SK Shipping joined in the motion to transfer, ECF No. 79, suggesting that it also consents to jurisdiction there.

5

inexpensively resolve the action; and (viii) the interest of justice." *Complaint of Am. President Lines, Ltd.*, 890 F. Supp. 308, 314 (S.D.N.Y. 1995) (applying these factors to a Rule F(9) transfer motion, since the "standards for applying F(9) are those which have been developed for the application of § 1404(a)"). Courts also consider "the plaintiff's choice of forum, . . . the location of relevant documents[,] . . . the relative means of the parties," *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010), the "district court's familiarity with governing law," and "trial efficiency," *Alden Corp. v. Eazypower Corp.*, 294 F. Supp. 2d 233, 237 (D. Conn. 2003).

### 1. *Plaintiff's Choice of Forum*

Ordinarily, "[i]n considering a motion to transfer, a district court . . . affords plaintiff's choice of forum substantial weight." *Alden Corp.*, 294 F. Supp. 2d at 237. However, "plaintiff's choice of forum may be entitled to less weight where the operative facts are not connected to the choice of forum or where plaintiff chooses a forum other than his or her residence." *Orr v. Bristol-Myers Squibb Co.*, No. 3:15CV1220, 2016 WL 740392, at *1 (D. Conn. Feb. 24, 2016); *see also Matter of GPA Techs., Inc.*, No. 2:17-CV-05461, 2018 WL 6075354, at *3 (C.D. Cal. Aug. 7, 2018) (applying this factor to a Rule F(9) transfer motion—where claimants filed suit in California Superior Court, the petitioner sought limitation of liability in federal court in the Central District of California, and then petitioner moved for transfer of the limitation action to the District where the accident occurred—noting that a claimant's choice of forum "is given little weight when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy").

Here, the claimants are all Texas residents, and the accident complained of occurred at the Port of Houston in Texas. ECF No. 80 at 8 (Claimants admit that Montoya's family and the

other longshoremen all reside in Texas); *id.* at 2 (summarizing incident at Port of Houston). The claimants' decision to file their State Court Action in Connecticut is therefore given little weight in the transfer analysis here: the claimants do not live in Connecticut, and none of the operative facts about the accident are connected to Connecticut.

### 2. *Convenience of Parties*

As noted, the Claimants are all Texas residents. The Petitioners are two business entities who owned and operated the *M/V Grebe Bulker*. According to the Petitioners' filings in this case, Grebe Shipping LLC, the owner of the ship, was organized in the Marshall Islands, and Eagle Ship Management LLC, the operator of the ship, was organized under the laws of Delaware with its principal office located in Stamford, Connecticut.[3] ECF No. 28-1 ¶¶ 6–7 (Declaration of Michael Mitchell, the General Counsel of Eagle Shipping International (USA) LLC, which wholly owns Petitioner Eagle Ship Management LLC). SK Shipping Co., Ltd., the charterer of the *M/V Grebe Bulker*, also filed a claim in the Limitation Action and is a third-party defendant. ECF No. 75 at 2; ECF No. 17 (SK Shipping's answer to the Petitioners' complaint); ECF No. 29 (third-party complaint by Petitioners against SK Shipping). SK Shipping is headquartered in

---

[3] In their brief, the Petitioners state that they "are both Marshal Islands limited liability companies," but this contradicts the declaration filed in connection with an earlier motion in this case. Michael Mitchell's declaration explains that Eagle Bulk Shipping Inc. (a Marshall Islands corporation with its principal office in Stamford, Connecticut, ECF No. 80-1), the defendant in the State Court Action, is the "ultimate parent company" of Grebe Shipping LLC ("formed under the laws of the Marshall Islands"), the owner of the *M/V Grebe Bulker* and one of the Petitioners in the Limitation Action. ECF No. 28-1 ¶¶ 5–6. Eagle Bulk Shipping Inc. also wholly owns Eagle Bulk Management LLC (a "Marshall Islands company"), which wholly owns Eagle Shipping International (USA) LLC ("formed under the laws of the Marshall Islands"), which wholly owns Eagle Ship Management LLC ("organized . . . under the laws of Delaware with its principal office located in Stamford, Connecticut"), the manager of the *M/V Grebe Bulker* and the other Petitioner in the Limitation Action. ECF No. 28-1 ¶¶ 4–7. Thus, Eagle Bulk Shipping Inc. is the "ultimate parent company" of both Petitioners in this action.

Seoul, South Korea. ECF No. 80 at 3; "Domestic Offices," SK Shipping, https://www.skshipping.com/Eng/Contact/HeadOffice.aspx.

I consider this factor neutral. While the Claimants are all Texas residents, "Connecticut is their choice of forum," so neither venue can be considered inconvenient for them. ECF No. 80 at 8. Similarly, Petitioner Eagle Ship Management LLC, the operator of the *M/V Grebe Bulker*, has its principal office in Stamford, Connecticut, ECF No. 28-1, but seeks to transfer the action to the Southern District of Texas. Neither venue is clearly more convenient for Petitioner Grebe Shipping LLC, described as a "Marshall Islands limited liability company[y]," ECF No. 75 at 9. SK Shipping joined in the Petitioners' motion to transfer, ECF No. 79, and its American office is located in Houston, Texas. "World Offices," SK Shipping, https://www.skshipping.com/Eng/Contact/BranchOffice.aspx, but either Texas or Connecticut would likely be reasonably convenient for a global company like SK Shipping.

### 3. *Convenience of Witnesses and Availability of Process*

Courts in this District typically consider the "convenience of witnesses" to be the most important factor in deciding a motion to transfer. *See Allstate Prop. & Cas. Ins. Co. v. Titeflex Corp.*, No. 3:14-CV-945, 2015 WL 1825918, at *3 (D. Conn. Apr. 22, 2015) ("The convenience of the witnesses is generally considered the most important factor in determining whether a venue transfer is appropriate."); *Labonte v. TD Bank, N.A.*, No. 3:10-CV-1335, 2011 WL 3930296, at *2 (D. Conn. May 11, 2011) (same). A party moving for transfer on this basis "must specifically identify witnesses in the transferring district upon which it will rely and state the likely contents of their testimony." *Labonte*, 2011 WL 3930296, at *2.

The Petitioners' counsel submitted a declaration stating that the Petitioners anticipate "more than 25 depositions of Texas residents," including members of Montoya's family, other

8

longshore claimants with personal injury or bystander claims, witnesses from the Stevedore employer of Montoya and the longshore claimants, local authorities in Houston who investigated the incident, and medical providers for the personal injury claimants. Lennon Decl., ECF No. 76 ¶ 8. The declaration does not explicitly "state the likely contents" of each named witness's testimony individually, but the relevance of many of the listed witnesses' testimony is self-evident. For instance, other longshoremen with personal injury or bystander claims, longshoremen who witnessed the incident, witnesses from the Stevedore employer including a "[c]orporate representative on safety, its investigation, OSHA citation, etc.," *id.*, would all clearly have relevant testimony to offer in an action about Petitioners' liability. The Claimants do not dispute the relevance of the listed witnesses, except for the "medical provider and the medical examiner." ECF No. 80 at 8 n.2.

Regarding the non-party witnesses, the Claimants argue only that such witnesses "can be deposed in Texas or wherever they may be located," and that the Petitioners "have failed to identify any hardships or difficulties [the witnesses] would encounter in having to travel to Connecticut." ECF No. 8. To the contrary, Lennon's declaration details the expected cost of travel from Texas to Connecticut for trial, estimating that such travel would cost "approximately between $700 and $800 per witness . . . based on a two-night stay in Connecticut." Lennon Decl., ECF No. 76 ¶¶ 9–10. In addition, the Petitioners correctly note that the non-party witnesses located in Texas would be beyond the subpoena power of this Court. ECF No. 75; Fed. R. Civ. P. 45(c)(1)(A) ("A subpoena may command a person to attend a trial . . . within 100 miles of where the person resides, is employed, or regularly transacts business in person; or within the state where the person resides, is employed, or regularly transacts business in person . . . ."). While the Petitioners do not name any specific "unwilling witness who would not be

9

willing to come to Connecticut for trial," ECF No. 80 at 8, courts do not typically require movants to identify particular "unwilling witness[es]." *Labonte*, 2011 WL 3930296, at *3 ("Because the testimony of at least some of these nonparty witnesses would be essential," the inability to compel the witnesses to attend trial "weighs heavily in favor of transfer."). And while witness testimony could be presented via video at any trial, ECF No. 80 at 8, live testimony is generally preferred. In any event, willingness and technological work-arounds are less-preferred alternatives to convenience and subpoena power to compel in-person testimony.

I find that the convenience of witnesses and the availability of process factors both weigh decidedly in favor of transfer.

### 4. *Ease of Access to Documents and Relevant Sources of Proof*

This factor also weighs in favor of transfer, though it is considered a less important factor given the availability of electronic storage and transmission of documents. *See Charter Oak Fire Ins. Co. v. Broan-Nutone, L.L.C.*, 294 F. Supp. 2d 218, 221 (D. Conn. 2003). Here, the Petitioners argue that the administrator of Montoya's estate "was appointed in Texas and autopsy and Incident-related investigation documents will be found in Texas, as will be the medical records relating the surviving Claimants' injuries allegedly sustained in the Incident." ECF No. 75 at 9. The Claimants do not address this factor, except to agree that it "carries relatively minimal weight" and to note that the ship itself is transient.

I find that this factor, given its lesser importance, weighs slightly in favor of transfer.

### 5. *Site of Occurrence/Locus of Operative Facts*

Courts in this District consider the "locus of operative facts . . . an important factor"— one based on "where the events from which the claim arises occurred." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 268 (D. Conn. 2012). The parties do not dispute that the

accident at issue occurred at the Port of Houston, Texas. *See* ECF No. 80 at 7. The Petitioners also note that the "investigation into the Incident by state and federal authorities, including OSHA, was conducted at the Port of Houston, Texas." ECF No. 75 at 8. Claimants argue that this factor is neutral, noting that "the subject pipe had been loaded prior to the incident, presumably in Korea," and that the "charter agreement at issue" is between parties based in Connecticut and Korea. ECF No. 80 at 7. The Claimants' argument is unavailing, since they do not explain the relevance of the charter agreement to the personal injury claims and, in any event, "not every occurrence relevant to the . . . plaintiffs' cases need have occurred in the transferee forum to make that forum the locus of operative facts." *Costello*, 888 F. Supp. 2d at 268–69. Moreover, in the context of a Rule F(9) transfer motion, "the location of the casualty is often of primary significance in the transfer analysis." *In re F/V Misty Blue, LLC*, No. CV1712773, 2018 WL 1837827, at *4 (D.N.J. Apr. 18, 2018). While some relevant events may have occurred outside of the Southern District of Texas, such as potentially negligent loading of the pipe, the Petitioners have shown that the case's center of gravity is in the Southern District of Texas, where the accident and all subsequent medical care and investigation occurred. Therefore, this factor weighs in favor of transfer.

### 6. *Trial Efficiency, Familiarity with Governing Law, and the Interests of Justice*

Finally, the parties essentially agree that factors of trial efficiency and familiarity with governing law are neutral. *See* ECF No. 75 at 11; ECF No. 80 at 9. Because admiralty law will apply to the Limitation Action, either venue would be equally familiar with governing law. And Petitioners do not address the matter of trial efficiency. ECF No. 80 at 9. I agree, therefore, that these factors are neutral. I do not find any other "interests of justice" favoring one venue, other than the factors discussed above.

\*\*\*

After considering the relevant factors, I find that the Petitioners have made a "clear and convincing showing", *Costello*, 888 F. Supp. 2d at 266, that transfer to the Southern District of Texas under Rule F(9) serves the "convenience of parties and witnesses, in the interest of justice." Though the claimants chose Connecticut as the forum for their State Court Action, they do not reside there, the accident did not occur there, and the majority of the § 1404 factors—particularly the convenience of witnesses, availability of process, location of relevant documents, and the locus of operative facts—weigh in favor of transfer. Therefore, I grant the Petitioners' motion to transfer this Limitation Action to the Southern District of Texas. Pursuant to D. Conn. Local Rule 83.7, on the eleventh day following the entry of this ruling, the Clerk shall transmit this ruling and all papers on file in this case to the U.S. District Court for the Southern District of Texas, provided that no timely motion for reconsideration of the order of transfer is filed.

### III.     MOTION TO LIFT STAY

"Generally, the transfer of a case divests a court of jurisdiction over the action." *Azzara v. Fitzpatrick*, No. 1:17-CV-6904, 2017 WL 6387730, at \*1 (S.D.N.Y. Oct. 24, 2017) (citing *Drabik v. Murphy*, 246 F.2d 408, 409 (2d Cir. 1957)); *see also In re Warrick*, 70 F.3d 736, 739 (2d Cir. 1995) (noting that "in general, when a motion for transfer under 28 U.S.C.A. § 1404(a) has been granted, and the papers lodged with the clerk of the transferee court, the transferor court—and the appellate court that has jurisdiction over it—lose all jurisdiction over the case and may not proceed further with regard to it" (quoting 15 Fed. Prac. & Proc. Juris. § 3846 (4th ed.); internal quotation marks omitted)). Therefore, once the Clerk transmits the papers on file in this case on the eleventh day following this ruling, I will lose jurisdiction over the Limitation Action. Moreover, in cases such as this one arising under federal law, the transferee court should apply

its own interpretation of federal law. *See Desiano v. Warner-Lambert & Co.*, 467 F.3d 85, 91 (2d Cir. 2006) ("The federal circuit courts are under duties to arrive at their own determinations of the merits of federal questions presented to them . . . . If a federal court simply accepts the interpretation of another circuit without independently addressing the merits, it is not doing its job." (internal quotation marks and alterations omitted)), *aff'd sub nom. Warner-Lambert Co., LLC v. Kent*, 552 U.S. 440 (2008). The parties have identified key differences between Second Circuit and Fifth Circuit law relevant to the motion to lift the stay. *See, e.g.*, ECF No. 83 at 3. Because the Southern District of Texas will have the duty to apply its own interpretation of federal law to this Limitation Action, that court should decide whether the Limitation Act allows it to lift the stay on the Claimants' State Court Action. It does not serve the interests of judicial economy for me to enter a substantive ruling based on Second Circuit law that may conflict with the Southern District of Texas court's interpretation of the issue.

For these reasons, I agree that the "court that will determine Petitioners' claims under the Limitation Act should determine whether to exercise its discretion to lift the stay order under the circumstances of the case," ECF No. 83 at 3, and I deny without prejudice the Claimants' motion to lift the stay.

**IV.    CONCLUSION**

For all the foregoing reasons, the Petitioners' motion to transfer, ECF No. 77, is GRANTED. The Clerk shall transmit this ruling and all papers on the eleventh day following the entry of this ruling, pursuant to D. Conn. Local Rule 83.7.

I DENY without prejudice the Claimants' motion to lift the stay, ECF No. 73.

IT IS SO ORDERED.

Dated:      Hartford, Connecticut                                   /s/
            March 25, 2020                                          Michael P. Shea, U.S.D.J.